IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BARNES & NOBLE PIN PAD LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | Case No. 1:12-cv-08617<br><br>CLASS ACTION<br><br>Honorable John W. Darrah |

**BARNES & NOBLE, INC.'s MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

Within days after Defendant Barnes & Noble, Inc. ("B&N") announced that it had been the victim of a PIN Pad skimming attempt, Plaintiffs (four B&N customers) filed these now consolidated lawsuits seeking various damages from B&N. *However, not one of the four Plaintiffs alleges that he or she has suffered any injury-in-fact, much less an injury that is fairly traceable to B&N.* Under the Supreme Court's decision in *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013), this Court's decision in *Sterk v. Best Buy Stores, L.P.*, 11 C 1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012), and other applicable precedents, the Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of Article III standing or, in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**STATEMENT OF FACTS**

In mid-September 2012, B&N discovered that certain PIN Pad card readers in 63 of its stores had been tampered with by third parties to facilitate the unauthorized capture of payment card information ("skimming"). (Compl. ¶¶ 2, 18, 20.) Upon discovery of the tampering, B&N disconnected every PIN Pad device from its more than 700 stores. (*Id.* ¶ 47.) B&N issued a press release on its Web site on October 24, 2012, providing public notice about the incident and

identifying the impacted stores. (*Id.* ¶ 53 & n.15.) The four Plaintiffs allege that at some time prior to September 14, 2012, they swiped a debit or credit card at one of the affected B&N stores. (*Id.* ¶¶ 10-14.) No Plaintiff alleges that his or her personal information was actually stolen or misused. Plaintiffs nonetheless assert five claims and purport to represent a "9-State Class" covering all persons who made a purchase and swiped a payment card at a PIN Pad in one of the impacted B&N stores between November 1, 2010 and September 14, 2012. (*Id.* ¶ 72.)

I. **THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(1) BECAUSE PLAINTIFFS LACK ARTICLE III STANDING**

Federal courts may only adjudicate "cases" and "controversies." U.S. Const. art. III, § 2. To establish standing, Plaintiffs must allege injury that is "[1] concrete, particularized, and actual or imminent; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling." *Clapper*, 133 S. Ct. at 1147 (citation omitted). Three key principles are important here: *First*, as the Supreme Court recently reaffirmed: "[a]llegations of *possible* future injury are not sufficient"; rather, if actual injury has not already occurred, then the injury "must be *certainly impending* to constitute injury in fact." *Id.* (emphasis in original; citation and internal quotation marks omitted). *Second*, although this is a putative class action, subject matter jurisdiction exists only if the plaintiffs "allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (emphasis added; citation omitted); *Kohen v. Pac. Inv. Mgmt.*, 571 F.3d 672, 676 (7th Cir. 2009). *Third*, "[t]he party asserting a claim has the burden to establish standing, and the court presumes lack of jurisdiction unless the claimant proves otherwise." *Best Buy*, 2012 WL 5197901, at *5.

2

### A. The Plaintiffs' Individual Allegations Do Not Demonstrate That They Suffered Injuries-in-Fact Fairly Traceable to Barnes & Noble

Plaintiffs Clutts, Honor, and Dieffenbach allege only that at some unidentified time, they made purchases at one of the B&N stores where a tampered PIN Pad was later discovered. (Compl. ¶¶ 10-12.) They allege that their personal information has been "exposed," (*id.*), but offer no facts to support this bare allegation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint must contain "sufficient factual matter" to state a plausible claim for relief). They do not allege that the skimmers accessed their information. They do not allege that any unauthorized charges or withdrawals were made on their accounts at B&N stores, banks, or anywhere else. They do not allege that their credit has been impaired or their identities stolen. And they do not allege that they have been victims of any fraudulent activity whatsoever. In short, they do not allege that *anything* has happened to them, and therefore they do not allege injury-in-fact. *See Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1052-53 (E.D. Mo. 2009) (no injury-in-fact where there was no allegation that information had in fact been stolen or identity compromised).

Plaintiff Dieffenbach claims to have suffered some "emotional distress . . . including, among other things, anxiety." (Compl. ¶ 11.) But because she does not allege that that her information was ever skimmed, accessed or misused, nor does she allege any facts demonstrating that her anxiety is fairly traceable to any conduct of B&N, her claim for emotional distress does not satisfy constitutional standing requirements. *See Reilly v. Ceridian Corp.*, 664 F.3d 38, 44-46 (3d Cir. 2011) (dismissing for lack of standing plaintiff's claim for emotional distress in wake of security breach), *cert. denied*, 132 S. Ct. 2395 (2012); *Low v. LinkedIn Corp.*, 11-CV-1468-LHK, 2011 WL 5509848, at *3-*4 (N.D. Cal. Nov. 11, 2011) (dismissing for lack of standing plaintiff's claim for emotional harm).

3

The fourth Plaintiff, Winstead, also fails to allege that her card data was skimmed, accessed, or misused by anyone. She alleges only that near the end of September 2012, she received a call from her credit card company about a potentially fraudulent charge on her credit card. (Compl. ¶ 14.) After she confirmed the charge was fraudulent, the company deactivated her card and sent a replacement. (*Id.*) There is nothing in these allegations upon which to base injury-in-fact: she does not allege that her card company held her liable for the fraudulent charge, that she incurred any card replacement fees, or that she suffered even a penny of loss. Like her co-Plaintiffs, Winstead has not alleged any *injury* whatsoever. *See Hammond v. The Bank of New York Mellon Corp.*, 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *8 (S.D.N.Y. June 25, 2010) (plaintiffs lacked standing where they alleged that their personal information was misused but had been reimbursed for unauthorized charges); *see also In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 522, 531 n.6 (N.D. Ill. 2011) (recognizing on a Rule 12(b)(6) motion that only unreimbursed "unauthorized withdrawals from their bank accounts and/or bank fees" could establish compensable injury as a result of a data breach).

Additionally, Winstead fails to show how her purported injury is "fairly traceable" to B&N. Winstead alleges only that she made several purchases at a B&N store, and weeks later received a call from her credit card company alerting her to a potentially fraudulent charge. (Compl. ¶¶ 13-14.) She has not alleged any connection between the attempted fraudulent charge and the skimming at issue here. At most, she alleges that one event occurred after the other, but a "mere coincidence in timing" does not establish a causal connection sufficient to confer standing. *See Hammond*, 2010 WL 2643307, at *5, *13 ("coincidence in timing" will not establish causal connection between loss of data tapes and someone opening up new credit card in plaintiff's name).

4

### B. The Complaint's Generalized Allegations of Harm are Also Insufficient to Confer Standing

The Complaint also alleges various theories of generalized harm, but each fails as a matter of law.

<u>Deprivation of the Value of PII</u>. Plaintiffs allege that they have been "depriv[ed] of the value of their PII [personally identifiable information], for which there is a well-established national and international market." (Compl. ¶¶ 68, 91, 116.) That theory of damages was recently rejected by this Court in *Best Buy*. Because the plaintiff there had not alleged that Best Buy *sold* his information to anyone, and did not allege any inability "to sell his *own* information for as much value," this Court concluded that the plaintiff had failed to adequately plead an Article III injury. 2012 WL 5197901, at *6; *see Yunker v. Pandora Media, Inc.*, 11-CV-03113 JSW, 2013 WL 1282980, at *4 (N.D. Cal. Mar. 26, 2013) (rejecting "diminution in value of PII" theory as basis for standing); *LaCourt v. Specific Media, Inc.*, No. SACV 10–1256–GW(JCGx), 2011 WL 1661532, at *4-*5 (C.D. Cal. Apr. 28, 2011) (same); *Low*, 2011 WL 5509848, at *4 (same); *In re iPhone Application Litig.*, No. 11-MD-2250, 2011 WL 4403963, at *4-*6 (N.D. Cal. Sept. 20, 2011) (same); *see also In re Facebook Privacy Litig.*, No. 10-CV-2389, 2011 WL 6176208 at *5 (N.D. Cal. Nov. 22, 2011) (no authority supports damage theory based on the lost "value" of personal information).

The "lost value" theory that Plaintiffs advance to establish standing should likewise be rejected here. Plaintiffs nowhere allege that they intended to sell, or that they are now foreclosed from selling, their credit or debit card information on any market. As in *Best Buy*, Plaintiffs do not allege that B&N sold skimmed information to anyone or exchanged it on any market, rendering implausible Plaintiffs' allegation that the value of their information was somehow diminished. And Plaintiffs' reliance on third party survey data about the value of personal

5

information is unavailing, as the survey says nothing of how the Plaintiffs *here, in this case*, value their personal information or intend to sell it.

    Diminished Value of Products and Services Purchased from B&N.  Plaintiffs allege that because they "were denied privacy protections that they paid for," they have "overpaid" for products purchased from B&N.  (Compl. ¶ 67.)  Such "overpayment" has also been rejected by this Court and others as a basis for standing.  In *Best Buy*, the plaintiff argued that he "placed value on [Best Buy's] compliance with applicable laws," and that Best Buy's failure to comply with applicable laws resulted in the plaintiff overpaying for purchases.  2012 WL 5197901, at *7.  The Court rejected these claimed injuries, observing that because the store charges the same price whether or not it obtains personal information, the "value" of that information could not be factored into the sale price.  *Id.*  The Court concluded that the plaintiff had not alleged a "concrete" economic injury sufficient to demonstrate actual injury-in-fact under Article III.  *Id.* at *6-*7.  *Best Buy* is in accord with decisions in other jurisdictions.  *See, e.g.*, *In re LinkedIn User Privacy Litig.*, No. 5:12-CV-03088 EJD, 2013 WL 844291, at *4 (N.D. Cal. Mar. 6, 2013) (rejecting theory that plaintiffs "actually provided consideration for the security services which they claim were not provided" or that they relied on any alleged representation about LinkedIn's compliance with industry standards; requiring plaintiffs to allege more than that they overpaid).

    Plaintiffs here allege that the *services* they purchased from B&N "necessarily included" compliance with industry standards on data collection (Compl. ¶ 67), but do not explain what "services" they purchased from the bookstore, or how they provided any consideration for the security they were allegedly denied.  Plaintiffs do not allege that B&N charges different prices for its products depending on whether the customer pays using a debit or credit card as opposed to cash, and therefore cannot plausibly show how compliance with standards relating to the

6

security of their information was factored into any price.

Increased Risk of Identity Theft. Plaintiffs generally allege that they now face an "increased risk of identity theft." (*E.g.*, Compl. ¶ 68.) In *Clapper*, the Supreme Court directly rejected such allegations as insufficient to confer standing, because "'threatened injury must be *certainly impending* to constitute injury in fact,' and …'[a]llegations of *possible* future injury' are not sufficient." 133 S. Ct. at 1147 (emphasis in original; citations omitted). The Court held "that respondents lack Article III standing because they cannot demonstrate that the future injury they purportedly fear is certainly impending .…" *Id.* at 1155. *Clapper* also holds that it is not enough for plaintiffs to "speculate and make assumptions" about possibilities of future harm. *Id.* at 1148. And, the Court made clear that standing is lacking when the claim of future injury would depend on the unspecified actions of third parties: "We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Id.* at 1150.

Plaintiffs here have not alleged that their data have been skimmed or misused, and they do not – and cannot – allege that any cognizable injury to them is "certainly impending" as required by *Clapper*. Any conclusions about possible future injury to Plaintiffs would depend on impermissible speculations and assumptions, including about the actions of the independent and unknown third parties who tampered with the devices.

Prior to *Clapper*, the Seventh Circuit had held that "risk of future harm" could be sufficient to confer standing under certain circumstances. *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007). However, the Supreme Court's unambiguous holding in *Clapper* now makes clear that a "risk of future harm" will not be sufficient to confer standing, unless the future injury is "certainly impending." Indeed, even prior to *Clapper*, the standing analysis in

7

*Pisciotta* was heavily criticized because it contained no discussion of Supreme Court standing law, and instead analogized from unrelated environmental and toxic tort cases. *See, e.g.*, *Reilly*, 664 F.3d at 44, 46 (refusing to follow *Pisciott*a after noting its "skimpy rationale" and its failure to "discuss[] the constitutional standing requirements and how they apply to generalized data theft situations"); *Amburgy*, 671 F. Supp. 2d at 1051-52 (criticizing *Pisciotta*, and rejecting "risk of identity theft" as a basis for standing).[1]

Time and Expenses to Mitigate Increased Risk of Identity Theft. Although no Plaintiff alleges that he or she purchased credit monitoring services, (*see* Compl. ¶¶ 10-14), the Complaint alleges as damages "out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud" as well as the "value of [Plaintiffs'] time spent mitigating" that risk. (*See, e.g.*, Compl. ¶¶ 68, 91, 109, 116.) However, *Clapper* expressly holds that "costs . . . incurred to avoid [injury]," even if based on a "subjective fear" of injury, are "insufficient to create standing." 133 S. Ct. at 1152-53. Plaintiffs may not merely contend that the "risk" of future injury "requires them to take costly and burdensome measures to protect the confidentiality" of their information, and they "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 1151; *see also Reilly*, 664 F.3d at 46 ("costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the [non-cognizable] alleged 'increased risk of injury'"); *Katz*, 672 F.3d at 79 ("the plaintiff purchased identity theft insurance and credit monitoring services to guard against a

---

[1] *See also Katz v. Pershing, LLC*, 672 F.3d 64, 80 (1st Cir. 2012); *Pandora*, 2013 WL 1282980, at *5; *Whitaker v. HealthNet of California, Inc.*, No. 11-CV-910, 2012 WL 174961, at *2 (E.D. Cal. Jan. 20, 2012); *Allison v. Aetna, Inc.*, No. 09-CV-2560, 2010 WL 3719243, at *5 (E.D. Pa. Mar. 9, 2010).

possibility, remote at best, that her nonpublic personal information might someday be pilfered. Such a purely theoretical possibility simply does not rise to the level of a reasonably impending threat").

Because Plaintiffs fail to allege any cognizable injury-in-fact, much less injury fairly traceable to B&N, they lack standing and the Complaint should be dismissed in its entirety.

## II. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Even if Plaintiffs could establish standing, the Complaint should still be dismissed for failure to state viable claims pursuant to Rule 12(b)(6).

### A. Plaintiffs Fail to State a Claim for Breach of Implied Contract (Count I)

Plaintiffs allege that in providing their financial information to B&N, they "entered into an implied contract . . . whereby Barnes & Noble became obligated to reasonably safeguard Plaintiffs' and the other Class members' PII." (Compl. ¶ 87.) This claim fails because allegations of exposure of personal information, *in the absence of present actual misuse*, are not actual damages sufficient to state a claim for breach of contract. *See Pisciotta*, 499 F.3d at 635. In *Pisciotta*, the plaintiffs "did not allege any *completed direct financial loss* to their accounts as a result of the breach." *Id.* at 632. "Nor did they claim that they or any other member of the putative class *already had been* the victim of identity theft as a result of the breach." *Id.* Finding that "Plaintiffs have not come forward with a single case or statute, from any jurisdiction, authorizing the kind of action they now ask this federal court, sitting in diversity, to recognize as a valid theory of recovery[,]" the court "decline[d] to adopt a 'substantive innovation' in state law" and dismissed plaintiffs' claims. *Id*. at 639-40. Here, too, Plaintiffs do not allege that they have lost money from unauthorized withdrawals or bank fees, or even that their data was skimmed, and accordingly, the implied contract claim must fail.

9

By contrast, the *Michaels* court permitted a breach of implied contract claim to proceed, but only after explaining that the plaintiffs had specifically alleged actual misuse of their information resulting in monetary loss in the form of unauthorized withdrawals and bank fees. 830 F. Supp. 2d at 532 n.6. As in *Pisciotta*, and unlike *Michaels*, Plaintiffs here do not allege that they have lost money from unauthorized withdrawals or bank fees, or even that their data was in fact skimmed. Accordingly, without any allegations of actual damages, Plaintiffs' breach of implied contract claim fails.

### B. Plaintiffs Fail to State a Claim for Violation of the Illiniois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count II)

Plaintiffs bring a claim for violation of the ICFA and violations of unspecified "Substantially Similar Laws of the 9-State Class," alleging that B&N failed to implement adequate security measures and omitted facts regarding the allegedly inadquate security of its PIN Pad devices. (Compl. ¶¶ 93, 99.) Plaintiffs fail to state a viable claim because "[o]nly a person who suffers actual damage may bring an action under the ICFA." *Michaels*, 830 F. Supp. 2d at 526 (*citing* 815 ILCS 505/10a(a)). Plaintiffs here do not allege that they have suffered out-of-pocket losses, much less unreimbursed out-of-pocket losses. *See id.* at 527 ("Plaintiffs suffer[] no actual [actionable] injury under the ICFA if Plaintiffs were reimbursed for all unauthorized withdrawals and bank fees and, thus, suffered no out-of-pocket losses"). Plaintiffs' claim that they face an increased risk of future identity theft and must spend money to mitigate that risk will not suffice: "[U]nder the ICFA, a plaintiff does not suffer actual damage simply because of the increased risk of future identity theft or because the plaintiff purchased credit monitoring services." *Id.* at 526; *Cooney v. Chicago Pub. Sch.*, 407 Ill. App. 3d 358, 365-66 (1st Dist. 2010) (credit monitoring costs and risk of future injury are not a present harm in and of themselves sufficient to support ICFA claim).

10

In addition, Plaintiffs fail to allege any unfair or deceptive practice. A practice is *unfair* only if causes substantial injury, *see Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18 (Ill. 2002), but Plaintiffs have not alleged *any* injury here. And a practice can be deemed *deceptive* only if the plaintiff alleges some deceptive communication from the defendant: "If there has been no communication with the plaintiff, there have been no statements and no omissions. . . . A consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant." *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 555 (Ill. 2009). Plaintiffs have identified no such deceptive communication. Plaintiffs' argument that they were deceived by B&N's failure to disclose purportedly inadequate security measures was rejected in *Michaels*, 830 F. Supp. 2d at 525 (where plaintiffs "identify no communication by Michaels which contained the allegedly deceptive ommission," they fail to allege a deceptive practice). Here, too, Plaintiffs allege that B&N "omitted . . . material facts from Plaintiffs and Class members regarding the inadequate security of its PIN pad devices" (Compl. ¶ 99), but they do not identify any communication from B&N in which the alleged omission appeared.

  **C.**  **Plaintiffs Fail to State a Claim for Invasion of Privacy by Public Disclosure of Private Facts (Count III)**

A claim for invasion of privacy based on public disclosure of private facts requires Plaintiffs to satisfy three elements: (1) the disclosure must be public; (2) the facts must be private facts; and (3) the matter made public would be highly offensive to a reasonable person. *Johnson v. K mart Corp.*, 311 Ill. App. 3d 573, 579 (1st Dist. 2000) (Illinois law); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1124 (N.D. Cal. 2002) (California law). To satisfy the public disclosure element, the disclosure must "communicate the matter to the public at large or to so many persons that the matter must be regarded as one of general knowledge." *Chisholm v. Foothill*

11

*Capital Corp.*, 3 F. Supp. 2d 925, 940 (N.D. Ill. 1998) (*quoting Roerhborn v. Lambert*, 277 Ill. App. 3d 181, 184 (1st Dist. 1995)). "Private facts" comprise only facts that are on their face "revealing, compromising, or embarrassing," *Busse v. Motorola Inc.*, 351 Ill. App. 3d 67, 72-73 (1st Dist. 2004), as distinguished from "personal information," such as names and social security numbers, which, if disclosed, are *not* "facially embarrassing and highly offensive." *Cooney*, 407 Ill. App. 3d at 367.

None of these elements is present. Plaintiffs have not alleged that their personal information was disclosed to the public at large. They have not demonstrated how credit and debit card information can constitute "private facts" when such information is routinely and voluntarily disclosed in the course of everyday transactions. And, even if Plaintiffs could allege some disclosure of their information, such disclosure does not arise to the level of "highly offensive to a reasonable person." *Johnson*, 311 Ill. App. 3d at 579.

**D.    Plaintiffs Fail to State a Claim for Violation of California Civil Code §§ 1798.80 *et seq*. (Count IV)**

Plaintiff Dieffenbach asserts a claim for violation of California Civil Code § 1798.82, California's Database Breach Act, which imposes certain data breach disclosure obligations on businesses that either own and retain, or that maintain, computerized personal information. Dieffenbach's claim fails because the statute only provides a cause of action to someone who has been "injured by a violation" of the statute, *see* Cal. Civil Code § 1798.84(b), and she does not allege any injuries attributable to the delay between the time she was notified of the breach and the time she contends she should have been notified. *See Boorstein v. Men's Journal LLC*, CV 12-771 DSF EX, 2012 WL 2152815, at *2 (C.D. Cal. June 14, 2012) (allegation that sale of plaintiff's information to third parties decreased its market value insufficient to state a claim because plaintiff could not show how that purported injury was "caused by a violation of the

12

statute").

In addition, Dieffenbach fails to allege any substantive violation of the statute. The Complaint alleges that B&N "maintained" Dieffenbach's personal information. (Compl. ¶ 122 (citing § 1798.82(b))). Under certain circumstances, § 1798.82(b) requires a business that "maintains" personal information to notify the information's "owner or licensee." Cal Civil Code § 1798.82(b). Under the statutory definition in § 1798.81.5, however, an "owner or licensee" of PII is a business, typically a credit card issuer, not the individual consumer (who is referred to in the statute as the "California resident"). Cal. Civil Code § 1798.81.5(a); *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 898 (N.D. Ill. 2012) (interpreting analogous Illinois statute). The Complaint does not specify the entity that "owns or licenses" Dieffenbach's information and thus fails to allege the entity that B&N was required to notify or how a lack of such notification is a violation of the law.[2]

### E. Plaintiffs Fail to State a Claim for Violation of California's Unfair Competition Law (Count V)

Dieffenbach alleges also that B&N engaged in "unlawful, unfair and fraudulent business practices" in violation of California's Unfair Competition Law ("UCL"). (Compl. ¶ 136.) Like the ICFA claim, her UCL claim fails because she does not allege – as she must under the statute – a personal loss of "money" or "property" as a result of any allegedly unlawful, unfair, or fraudulent conduct. Cal. Bus. & Prof. Code § 17204 (private plaintiff must have "suffered an injury in fact and . . . lost money or property as a result of the unfair competition"); *Ruiz v. Gap,*

---

[2] Cal. Civ. Code § 1798.83, mentioned in passing in the Complaint (at ¶ 131), is inapplicable because it requires a business with "an established business relationship with a customer" to make disclosures if it knowingly discloses certain personal information *to direct marketers*, and there is no such allegation here. The claim may also be foreclosed by the complete defense in § 1798.84 (d). *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, MDL 11MD2258 AJB MDD, 2012 WL 4849054, at *22 (S.D. Cal. Oct. 11, 2012).

*Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010). Generalized allegations regarding an alleged "exposure," or diminished value of, personal information do not qualify as a "loss of property" sufficient to state a claim under the UCL. In *Ruiz*, the plaintiff brought a class action against the Gap after the store disclosed that two laptops containing personal information of approximately 80,000 job applicants had been stolen. *Id.* at 1124-25. The court dismissed the UCL claim, finding:

> Ruiz has lost neither money nor property. His attempt to allege that the theft of the laptops somehow constitutes a loss of property because his personal information was contained on the laptop is unavailing. Nor has Ruiz presented any authority to support the contention that unauthorized release of personal information constitutes a loss of property. *Without any such authority, the Court is constrained to find that Ruiz has not alleged any loss of property and therefore has not stated a valid claim under §17200.*

*Id.* at 1127 (emphasis added); *see also Pandora*, 2013 WL 1282980, at *11; *iPhone*, 2011 WL 4403963, at *14 ("Numerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL."). Allegations of an increased risk also do not suffice. *Sony*, 2012 WL 4849054, at *15 ("heightened risk of identity theft, time and money spent on mitigation of that risk, and property value in one's information, do not suffice as injury under the UCL").

Additionally, Dieffenbach has not adequately alleged that B&N engaged in any "fraudulent," "unfair," or "unlawful" practice. *First*, the Complaint does not allege "fraudulent" conduct with particularity as required by Rule 9(b)'s heightened pleading requirement. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). The Complaint's conclusory assertion that B&N "engaged in activities that constitute unlawful, unfair, and fraudulent business practices" alleges no *facts* identifying what those supposedly fraudulent practices are. Moreover, a UCL plaintiff must demonstrate that she actually *relied* on some alleged misrepresentation. *See Sony*, 2012 WL 4849054, at *18 (dismissing UCL claim for failure to plead actual reliance).

14

*Second*, the Complaint's allegations of "unfair" activity are likewise deficient. California courts disagree as to whether a claim of unfairness must "be tethered to some legislatively declared policy," or subject to a balancing test that measures the harm to the consumer against the utility of the defendant's practice. *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735-36 (9th Cir. 2007). Regardless, the Complaint fails to state a claim because it does not allege any *facts* sufficient to demonstrate an unfair practice. Dieffenbach's grievance is that B&N engaged in unfair conduct by failing to provide timely notice of the PIN Pad tampering. (Compl. ¶ 138.) The Complaint alleges that the "harmful impact upon members of the general public . . . resulting from Barnes & Noble's conduct . . . far outweighs any reasons for [*sic*] justifications by Barnes & Noble" (*see id.* ¶ 139), but does not set forth any facts demonstrating what such "harmful impact" is. These allegations are precisely the "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action" that the Supreme Court has held "will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

*Finally*, while Dieffenbach asserts a claim for "unlawful" practices, she does not identify any violation of law other than her Database Breach Act claim, which fails as discussed above. ¶

## CONCLUSION

Lacking standing and any viable claim, Plaintiffs' Complaint should be dismissed.

Dated: April 30, 2013

Respectfully submitted,

s/Kristen E. Hudson (ARDC # 6281191)
Attorney for Barnes & Noble, Inc.

Kenneth L. Chernof
Hadrian R. Katz
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004
(202) 942-5000

Peter V. Baugher (ARDC # 0138282)
Kristen E. Hudson (ARDC # 6281191)
SCHOPF & WEISS LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois 60606
(312) 701-9300

## CERTIFICATE OF SERVICE

I, Kristen E. Hudson, an attorney, hereby certify that a true and correct copy of **Barnes & Noble, Inc.'s Memorandum of Law in Support of Its Motion to Dismiss the Consolidated Amended Complaint** was filed electronically with the Clerk of the Court using the CM/ECF System, which will automatically provide electronic notice upon all counsel of record on this 30th day of April, 2013.

/s/Kristen E. Hudson
Kristen E. Hudson