**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| *In re Barnes & Noble Pin Pad* | ) | |
| *Litigation* | ) | Case No. 12-cv-8617 |
| | ) | |
| | ) | Hon. John W. Darrah |
| | ) | |
| | ) | Magistrate Judge Schenkier |
| | ) | |
| | ) | |

**PLAINTIFFS' OPPOSITION TO BARNES & NOBLE'S
MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

Background..................................................................................................................................1

Argument ...................................................................................................................................1

I. Plaintiffs have Article III Standing. .......................................................................................2

    A. Plaintiffs' Injuries are Fairly Traceable to B&N's Conduct....................................................3

        1. Plaintiff Dieffenbach's emotional distress ...................................................................5

        2. Plaintiff Winstead's unauthorized credit card charge ....................................................6

    B. Plaintiffs Plead Injury-in-Fact. ...........................................................................................7

        1. Plaintiffs' increased risk of identity theft confers Article III standing...........................7

        2. Plaintiffs were injured by the deprivation of the value of their PII...............................7

        3. Plaintiff were injured by the diminished value of products and services purchased from B&N. ....................................................................9

        4. The loss of time and the expenses to mitigate the increased risk of identity theft constitutes injury...............................................................................10

II. B&N's Motion to Dismiss Pursuant to 12(b)(6) Should be Denied. .............................................11

    A.  Plaintiffs State a Valid Claim for Breach of Implied Contract ................................................11

    B.  Plaintiffs Allege Actionable Illinois Consumer Fraud Act ("ICFA") Claims ......................12

    C.  Plaintiffs Plead a Valid Claim for Invasion of Privacy ........................................................15

        1. Plaintiffs' private and confidential information was published..................................16

        2. Plaintiffs' credit and debit card information is private. ..............................................16

        3. The publication of Plaintiffs' private and confidential information was highly offensive...........................................................................................16

    D.  Plaintiff Dieffenbach Pleads a Valid California Database Breach Act Claim…....................17

        1.    B&N's security failures…......................................................................17

        2.    B&N's failure to provide immediate notification of the Security Breach..................................................................................................17

    E.  Plaintiff Dieffenbach Pleads a Valid California UCL Claim…...............................................19

Conclusion ................................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Ainsworth v. Century Supply Co.*,
   295 Ill. App. 3d 644, 693 N.E.2d 510 (1998) ........................................................................ 2

*Amburgy v. Express Scripts, Inc.*,
   671 F. Supp. 2d 1046 (E.D. Mo. 2009) .............................................................................. 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 1

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................ 1

*Booker-El v. Superintendent, Ind. State Prison*,
   668 F.3d 896 (7th Cir. 2012) .............................................................................................. 7

*Boorstein v. Men's Journal, LLC*,
   No. CV-12-771 DSF, 2012 WL 2152815 (C.D. Cal. June 14, 2012) ................................ 18

*Camacho v. Auto. Club of S. California*,
   142 Cal. App. 4th 1394 (2006) .......................................................................................... 20

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013) ............................................................................................. 2, 3, 7, 11

*Claridge v. RockYou, Inc.*,
   785 F. Supp. 2d 855 (N.D. Cal. 2011) ................................................................................ 8

*Connick v. Suzuki Motor Co.*,
   174 Ill. 2d 482, 675 N.E.2d 584 (1996) ......................................................................... 12-13

*Davis v. Ford Motor Credit Co., LLC*,
   179 Cal. App. 4th 581 (2009) ............................................................................................ 19

*Edwards v. First Am. Corp.*,
   610 F.3d 514 (9th Cir. 2010) ............................................................................................ 18

*Fed. Trade Comm'n v. Sperry & Hutchinson Co.*,
   405 U.S. 233 (1972) .............................................................................................................. 14

*Giammanco v. Giammanco*,
   253 Ill. App. 3d 750, 625 N.E.2d 990 (1993) .................................................................... 14

*Gibson v. Chicago*,
   910 F.2d 1510 (7th Cir. 1990) ............................................................................................ 1

*Graczyk v. West Publ'g Co.*,
   660 F.3d 275 (7th Cir. 2011) ............................................................................................ 18

*Gregory v. Albertson's Inc.*,
104 Cal. App. 4th 845 (2002) ............................................................................................ 19

*Hammond v. The Bank of New York Mellon Corp.*,
No. 08 Civ. 6060 RMB RLE, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ......................... 6

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ........................................................................................................... 2

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ................................................................................. 9

*In re Global Indus. Tech., Inc.*,
645 F.3d 201 (3d Cir. 2011).................................................................................................. 2

*In Re LinkedIn User Privacy Litig.*,
No. 5:12-CV03088 EJD, 2013 WL 844291 (N.D. Cal. Mar. 6, 2013)..................................... 9

*In re TJX Cos. Retail Sec. Breach Litig.*,
564 F.3d 489 (1st Cir. 2009)........................................................................................ 15, 20

*In Re: Michaels Stores Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011) ................................................. 11, 12, 13, 15, 20

*In re: Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
MDL No. 11-md-2258, 2012 WL 4849054 (S.D. Cal. Oct. 11, 2012)............................... 9, 18

*Johnson v. Kmart Corp.*,
311 Ill. App. 3d 573, 723 N.E.2d 1192 (2000) ............................................................. 15, 16

*Kirkpatrick v. Strosberg*,
385 Ill. App. 3d 119, 894 N.E.2d 781 (2008) ...................................................................... 14

*Libertarian Party of Los Angeles Cnty. v. Bowen*,
709 F.3d 867 (9th Cir. 2013) .............................................................................................. 11

*Low v. LinkedIn Corp.*,
No. 11-cv-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)................................ 5, 6

*Marin v. Leading Edge Recovery Solutions, LLC*,
No. 11 C 5886, 2012 WL 3292838 (N.D. Ill. Aug. 10, 2012).................................................. 2

*Massachusetts v. E.P.A.*,
549 U.S. 497 (2007)............................................................................................................. 2

*Miller v. Motorola, Inc.*,
202 Ill. App. 3d 976, 560 N.E.2d 900 (1990) ...................................................................... 16

*People ex rel. Daley v. Datacom Systems Corp.*,
146 Ill. 2d 1, 585 N.E.2d 51 (1991) .................................................................................... 13

*Perez v. Citicorp Mortgage, Inc.*,
301 Ill. App. 3d 413, 703 N.E.2d 518 (1998) ...................................................................... 14

*Pisciotta v. Old Nat'l Bancorp,*
   499 F.3d 629 (7th Cir. 2007) ........................................................................ 6, 7

*Preminger v. Peake,*
   552 F.3d 757 (9th Cir. 2008) ............................................................................ 2

*Ramirez v. Smart Corp.,*
   371 Ill. App. 3d 797, 863 N.E.2d 800 (2007) .......................................... 13

*Reilly v. Ceridian Corp.,*
   664 F.3d 38 (3d Cir. 2011)................................................................................ 5

*Resnick v. AvMed Inc.,*
   693 F.3d 1317 (11th Cir. 2012) ............................................................... 3, 9

*Revelis v. Napolitano,*
   844 F. Supp. 2d 915 (N.D. Ill. 2012) ...................................................... 1, 4

*Robinson v. Toyota Motor Credit Corp.,*
   201 Ill. 2d 403, 775 N.E.2d 951 (2002)................................................... 14

*Satkar Hospitality Inc. v. Cook County Bd. of Review,*
   819 F. Supp. 2d 727 (N.D. Ill. 2011) ....................................................... 13

*Saunders v. Michigan Ave. Nat'l Bank,*
   278 Ill. App. 3d 307, 662 N.E.2d 602 (1996) ........................................ 14

*Smith v. State Farm Mut. Auto. Ins. Co.,*
   93 Cal. App. 4th 700 (2001) ....................................................................... 19

*State v. Mayze,*
   622 S.E. 2d 836 (Ga. 2005)............................................................................ 8

*Sterk v. Best Buy Stores LP,*
   No. 11-c-1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012) ........... 8, 10

*Transit Exp., Inc. v. Ettinger,*
   246 F.3d 1018 (7th Cir. 2001) ..................................................................... 1

*Valley Forge Ins. Co. v. Swiderski Elecs., Inc.,*
   223 Ill. 2d 352, 860 N.E.2d 307 (2006) ................................................. 16

*Warth v. Seldin,*
   422 U.S. 490 (1975)........................................................................................ 2

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990)........................................................................................ 3

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.,*
   536 F.3d 663 (7th Cir. 2008) ..................................................................... 15

## Statutes

815 ILCS § 505/10a ........................................................................................... 13, 14

815 ILCS § 530/1, *et seq.* ................................................................................. 2, 13

Cal. Civ. Code § 1798.80, *et seq.* ........................................................................... 18

Cal. Civ. Code § 1798.81.5 ............................................................................... 17, 18

Cal. Civ. Code § 1798.82 ................................................................................... 2, 17

Cal. Civ. Code § 1798.84 ........................................................................................ 18

## Rules

Fed. R. Civ. P. 12(b)(1) ............................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1

## Other Authorities

Restatement (Second) Torts § 911 ............................................................................. 8

BALLENTINE'S LAW DICTIONARY (3d ed. 1969) ........................................................ 14

BLACK'S LAW DICTIONARY (5th ed. 1979) ............................................................... 14

T. Soma, et al., *Corporate Privacy Trend: The "Value" of Personally
Identifiable Information ("PII") Equals the "Value" of Financial Assets,*
15 RICH. J.L. & TECH. 11 (2009) ......................................................................... 8

## BACKGROUND

Because of Barnes & Noble's ("B&N") flawed payment security system, criminals were able to tamper with PIN pad devices at 63 separate B&N stores and steal credit and debit card information and debit card PIN numbers ("Personally identifying information" or "PII") from customers who swiped their cards through the affected PIN pads (the "Security Breach"). Consolidated Class Action Complaint ¶¶1-2 (D.E. #49) ("Complaint" or "Compl."). B&N waited nearly six weeks after it discovered the tampering to begin disclosing the Security Breach to the public. *Id.* ¶2. B&N's security failures enabled the "skimmers" to steal Plaintiffs' and Class members' PII from within B&N's stores, make unauthorized purchases using customers' credit and debit cards, and put Plaintiffs' and Class members' PII at serious and ongoing risk. *Id.* ¶3.

## ARGUMENT

Fed. R. Civ. P. 12(b)(1) allows a party to move to dismiss "for lack of subject-matter jurisdiction." While a plaintiff has the burden of establishing jurisdiction, a court accepts a plaintiff's well-pleaded factual allegations as true and draws reasonable inferences in their favor. *Revelis v. Napolitano*, 844 F. Supp. 2d 915, 919 (N.D. Ill. 2012) (citing *Transit Exp., Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001)).

The purpose of a Rule 12(b)(6) motion is to decide "the adequacy of the complaint, not to determine the merits of the case." *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). All that is required is "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As set forth below, Plaintiffs meet applicable pleading standards.

I.    **Plaintiffs Have Article III Standing.**

Article III standing is present when a party "demonstrate[s] that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007). Even though "[t]he contours of the injury-in-fact requirement [are] not precisely defined, [they] are very generous," and the "standard is met as long as the party alleges a specific, identifiable trifle of injury." *In re Global Indus. Tech., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (internal quotation omitted); *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008) ("[t]he injury may be minimal"). Plaintiffs allege an invasion of privacy claim, for which there is a presumption of nominal damages. *Ainsworth v. Century Supply Co.*, 295 Ill. App. 3d 644, 650, 693 N.E.2d 510, 514 (1998). Plaintiffs also allege violations of the Illinois Personal Information Protection Act, 815 ILCS §530/1, *et seq.*, and California's Database Breach Act, Cal. Civ. Code § 1798.82, which constitute injury-in-fact.[1] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) ("[i]njury in fact . . . may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)); s*ee also Marin v. Leading Edge Recovery Solutions, LLC*, No. 11 C 5886, 2012 WL 3292838 (N.D. Ill. Aug. 10, 2012) (allegations of unwanted calls established violation of the privacy and property interests protected by TCPA).

B&N cites *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013), to support its position that Plaintiffs lack standing. MTD at 2.[2] The Court noted it had "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact' and that '[a]llegations of *possible* future injury' are not sufficient," signifying the Court was not making

---

[1] Compl. ¶¶5, 46, 78 (d)-(e), (g), (m)-(n), 107, 118-32.
[2] Barnes & Noble, Inc.'s Memorandum of Law in Support of its Motion to Dismiss the Consolidated Amended Complaint [D.E. #44] is sometimes referred to herein as "MTD".

new law. *Id.* (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis added to original by the *Clapper* Court)). The Court further held its "cases do not uniformly require plaintiffs to demonstrate it is literally certain that the harms they identify will come about. In some instances, we have found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Id.* at n. 5 (collecting cases). In concluding the plaintiffs lacked Article III standing, *Clapper* noted it was "speculative" whether the Government would actually acquire the plaintiffs' communications under FISA and found that the plaintiffs failed to set forth facts that their communications would be targeted by the Government. *Id.* at 1148–49. Here, Plaintiffs allege that they made purchases at the affected stores during the relevant time period, Plaintiffs' PII has already been stolen, and there is an increased risk their PII will be subjected to further misuse, as evidenced by, *inter alia*, the unauthorized charge on Plaintiff Winstead's credit card account. Compl. ¶¶ 2-3, 13-14. The injury here is not self-inflicted or conjectural; it is concrete, particularized, and supported by the facts. *Compare Clapper*, 133 S. Ct. at 1153-54, *with* Compl. ¶¶41-45, 67-71. *Clapper* supports standing.

### A. Plaintiffs' Injuries are Fairly Traceable to B&N's Conduct.

Injury-in-fact that is even *indirectly* caused by a defendant's actions satisfies the fairly traceable requirement. *See, e.g.*, *Resnick v. AvMed Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012). B&N accepts customer payments for purchases through credit and debit cards issued by members of the payment card industry ("PCI"), such as Visa USA ("Visa"), MasterCard, Discover, and American Express. Compl. ¶22. At the time of the Security Breach, B&N was not in compliance with Visa's Global Mandate, PCI PIN Security Requirements, or the standards set by the PCI Security Standards Council. *Id.* ¶¶25, 28, 36-39, 49. As a result of B&N's failure to

properly secure and safeguard Plaintiffs' PII, Plaintiffs' PII was stolen, their rights violated, and they are at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. *Id.* ¶¶67-71.

Despite Plaintiffs' allegations that they made purchases at affected stores prior to the discovery of the tampered PIN pads, B&N incredulously argues that Plaintiffs offer "no facts" to support their allegation that their personal information has been "exposed." MTD at 3. Further, Plaintiff Winstead was a victim of a fraudulent charge on her credit card near the end of September 2012, after making purchases at the affected B&N store in Deerfield, Illinois. Compl. ¶14. Winstead's credit card company deactivated her credit card and she was without use of her credit card until a replacement card arrived. *Id.* Thus, Plaintiff Winstead's and the other Plaintiffs' injuries are fairly traceable to B&N's conduct.

B&N's reliance on *Amburgy v. Express Scripts, Inc.*, is misplaced because *Amburgy* found the plaintiff did not allege "his information has in fact been stolen, published or used in such a way so as to cause him damage either presently or in the future." *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1050 (E.D. Mo. 2009). Here, the Complaint alleges that criminals stole B&N customers' PII and that Plaintiffs used B&N PIN pads to make purchases at affected stores prior to the discovery of the criminal tampering. Significantly, Plaintiff Winstead had a fraudulent credit card charge that occurred after she made purchases at an affected B&N during the relevant time period. The reasonable inference from these facts is that Plaintiffs' PII was stolen to commit further criminal acts. *Revelis*, 844 F. Supp. 2d at 919 (on a motion to dismiss, a court accepts a plaintiff's well-pleaded factual allegations as true and draws reasonable inferences in their favor). Further, Plaintiffs alleged they were injured in several concrete ways, as set forth in the Complaint and discussed below. Compl. ¶¶67-71.

4

### 1. Plaintiff Dieffenbach's emotional distress

B&N argues that plaintiff Dieffenbach does not "allege any facts demonstrating that her anxiety is fairly traceable to any conduct of B&N." MTD at 3. The Complaint alleges "Diffenbach has suffered emotional distress from the Security Breach, including, among other things, anxiety." Compl. ¶11. This allegation, combined with the allegations listed above, is sufficient to demonstrate that her anxiety is caused by B&N's conduct that led to the Security Breach and put her at a real risk of identity theft.

The cases relied upon by B&N are distinguishable. In *Reilly v Ceridian Corp.*, there was no evidence to suggest that the data was misused or ever would be misused because there was "no evidence that the intrusion was intentional or malicious," as "no identifiable taking occurred; all that [was] known [was] that a firewall was penetrated." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 43-44 (3d Cir. 2011). The court found that the plaintiffs relied upon "speculation that the hacker: (1) read, copied, and understood their personal information; (2) intends to commit future criminal acts by misusing the information; and (3) is able to use such information to the detriment of [plaintiffs] by making unauthorized transactions in [plaintiffs'] names." *Id.* at 42. Here, the situation is much different because there is evidence that the Security Breach was accomplished by sophisticated criminals, and Plaintiff Winstead has alleged a fraudulent charge on her credit card that is fairly traceable to the Security Breach.

Further, B&N has not presented any evidence—nor could it at the pleadings stage—that Plaintiffs were not among those whose information *was* stolen in the Security Breach.[3]

B&N's reliance on *Low v. LinkedIn Corp.* is also misplaced. *Low v. LinkedIn Corp.*, No.

---

[3] *See* http://www.barnesandnobleinc.com/press_releases/10_23_12_Important_Customer_Notice.html (last visited May 16, 2013) ("[B&N] is working with banks, payment card brands and issuers to identify accounts that may have been compromised, so banks and issuers can employ enhanced fraud security measures on potentially impacted accounts.").

11-cv-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011). In *LinkedIn*, the court found that the plaintiff failed to allege facts sufficient to establish that plaintiff's alleged embarrassment and humiliation was fairly traceable to LinkedIn because he "ha[d] not alleged that his browsing history, with embarrassing details of his personal browsing patterns, was actually linked to his identity by LinkedIn and actually transmitted to any third parties [and had not alleged] *how* third party advertisers would be able to infer Low's personal identity from LinkedIn's anonymous user ID combined with his browsing history." *Id.* at *3 (italics in original). Plaintiff Dieffenbach does not allege she was "embarrassed and humiliated"; she alleges a different type of emotional harm—anxiety—that is fairly traceable to the Security Breach.

### 2. Plaintiff Winstead's unauthorized credit card charge

B&N argues Plaintiff Winstead does not allege any injury from the unauthorized charge on her credit card because her credit card company deactivated her card and sent her a replacement. MTD at 4. To the contrary, Plaintiff Winstead's allegation of actual misuse supports that Plaintiffs are at an increased risk of future harm from identity theft, which is sufficient for purposes of alleging injury for standing. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007) ("the injury-in-fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, absent the defendant's actions"). Whether Plaintiff Winstead suffered an unreimbursed loss is irrelevant for purposes of standing, as the fact of an unauthorized charge shows that she is at increased risk of future harm from identity theft.

B&N argues that a "'mere coincidence in timing' does not establish a causal connection sufficient to confer standing." MTD at 4 (citing *Hammond v. The Bank of New York Mellon Corp.*, No. 08 Civ. 6060 RMB RLE, 2010 WL 2643307, at *5 (S.D.N.Y. June 25, 2010)).

B&N's reliance on *Hammond* is misplaced because the plaintiff there "admit[ted] that a coincidence in timing is her sole basis for alleging that [the] unauthorized [credit card account] in her name was related to the [February 2008 computer back-up] tape loss." *Id.* Unlike *Hammond*, there is more than just a coincidence in timing here. The allegations support the inference that Plaintiff Winstead's PII was not just lost, but rather was stolen and misused as part of a large-scale criminal operation. Compl. ¶2.

### B. Plaintiffs Plead Injury-in-Fact.

#### 1. Plaintiffs' increased risk of identity theft confers Article III standing.

A data breach creating a risk of identity theft satisfies Article III standing. *Pisciotta*, 499 F.3d at 633–34. B&N relies heavily upon *Clapper*, 133 S. Ct. 1138 (MTD at 7), but *Clapper* does not change Article III standing law and *Pisciotta* remains in force in this Circuit. *See supra* at 2-3*; see also Booker-El v. Superintendent, Ind. State Prison,* 668 F.3d 896, 899 (7th Cir. 2012) (citing *Pisciotta* and finding standing where, assuming a property interest in the inmates' recreation fund, there was a substantial risk to plaintiff that he would lose benefits if the fund was misappropriated).

#### 2. Plaintiffs were injured by the deprivation of the value of their PII.[4]

Consumers place a high value not only on their PII, but also on the *privacy* of their PII. *Id.* ¶63 ("Among U.S. subjects, protection against errors, improper access, and secondary use of personal information is worth US$30.49–44.62."). The value of Plaintiffs' and Class members' PII on the black market is substantial—credit card numbers range in cost from $1.50 to $90 per card number. *Id.* ¶65. By way of the Security Breach, B&N has deprived Plaintiffs and Class members of the substantial value of their PII. *Id.* ¶65.

---

[4] Compl. ¶¶59-66.

B&N argues that because Plaintiffs have not alleged that they intended to sell, or that they are now foreclosed from selling, their credit or debit card information, and do not allege that B&N sold such information, that Plaintiffs' "lost value" theory should be rejected. MTD at 5. B&N relies upon this Court's decision in *Sterk v. Best Buy Stores LP*, No. 11-c-1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012). Unlike the data thefts and security lapses here, *Sterk* involved the issue of whether a retailer violated the Video Privacy Protection Act ("VPPA") by keeping and transferring the plaintiffs' video rental history between parent/subsidiary companies. *Id.* at *1. While relying substantially on the conclusion that the "internal" transfers of data did not constitute disclosure under the VPPA (*id.* at *2-3) and the lack of a private cause of action for data retention (*id.* at *3-4), the Court also noted that Sterk's claim of "lost value" was not recognizable injury because the plaintiff had not alleged that defendants sold his information or that plaintiff had not been able to sell his own information for as much value. *Id.* at *6.

Here, however, Plaintiffs' argument is that they have the right to control their PII—including the right to sell or not sell and to disseminate or not disseminate their PII. This right is a property right, and when and how they exercise this right has value. RESTATEMENT (SECOND) TORTS §911, cmt. b, e (1979); *see also Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 865 (N.D. Cal. 2011) ("the breach of his PII has caused him to lose some ascertainable but unidentified 'value' and/or property right inherent in the PII"); T. Soma, et al., *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11 (2009) (data in electronic form has value not only to a company that collects and stores it, but also to consumer who owns it); *accord State v. Mayze*, 622 S.E. 2d 836, 841 (Ga. 2005) ("identity fraud is an offense against the victim's possessory interest in his or her personal information," and PII is an intangible commodity). This

8

property right is no less valuable should Plaintiffs elect not to sell or otherwise disseminate their PII. B&N's failure to safeguard and protect Plaintiffs' PII, thereby allowing this right to be taken from Plaintiffs without their authorization, constitutes injury-in-fact and Article III standing.

### 3. Plaintiffs were injured by the diminished value of products and services purchased from B&N.

Plaintiffs allege that part of the benefit of the bargain was B&N's compliance with industry standards for collecting and safeguarding PII, which was included as part of the purchase price paid by Plaintiffs. Compl. ¶¶22-39, 67. It is readily apparent that the PIN pads and compliance with industry standards cost B&N money, both in terms of the costs of the PIN pads and the employee time required to implement and maintain the industry standards and safeguards.

Courts have found standing where a defendant charges money for a good or service but fails to honor its own policies in connection with providing the good or service. *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011) ("[A] plaintiff who is a consumer of certain services (i.e., who 'paid fees' for those services) may state [a claim requiring monetary loss] when a company, in violation of its own policies, discloses personal information about its customers to the public."). In *In re: Sony Gaming Networks and Customer Data Sec. Breach Litigation*, MDL No. 11-md-2258, 2012 WL 4849054, at *15 (S.D. Cal. Oct. 11, 2012), the court noted that economic injury can occur both when a plaintiff gives more or acquires less in a transaction than he or she otherwise would have. *See also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012) (economic injury stemming from the failure to implement security policies, for which plaintiffs allegedly paid as a part of their monthly premiums).

B&N cites two decisions that are factually distinguishable. *In Re LinkedIn User Privacy Litigation*, No. 5:12-CV-03088 EJD, 2013 WL 844291 (N.D. Cal. Mar. 6, 2013), involved

claims that the online social networking web service failed to protect members' User Ids, passwords, and email addresses. *Id.* at *2. Members had options for both free and premium memberships, and the data security and sign-up provisions were the same for both, *i.e.*, signing up for the premium membership did not involve any additional security for the data stolen and, unlike here, there were no allegations that "premium" (paid) members' credit card information was compromised. *Id.* at *1-3. The court dismissed the complaint, finding that the premium members did not pay anything for data security because exactly the same services were provided to non-premium users for free.[5] Id. at *3-4. In contrast, the Complaint here alleges that B&N included its costs for security in its prices and the security is a part of each transaction regardless of the payment method. Compl. ¶67.

B&N again relies on the *Sterk* decision, which, as explained above, is factually distinguishable. The Court noted that the items cost the same whether the customer paid for the rental video with cash or a credit card and, thus, no claim for lost value could exist. A merchant passes on its overhead to its customers, including its costs for data security and costs for cash handling, *e.g.*, costs for man hours to stock and balance cash drawers, safes, etc. B&N customers' purchases included these costs regardless of the method of payment. Compliance with the promised and expected data security has both a demonstrable cost to merchants and value to credit customers. That value here was not delivered and, thus, Plaintiffs overpaid B&N.

### 4. The loss of time and the expenses to mitigate the increased risk of identity theft constitutes injury.

B&N is instructing customers who swiped their cards at any of the B&N stores with affected PIN pads to take certain steps: (i) credit card users should review their accounts and notify their banks if they discover unauthorized purchases or cash advances; and (ii) debit card

---

[5] Notably, LinkedIn and other social media web sites obtain the bulk of their revenue from advertising on their websites and not by operating brick-and-mortar retail stores or selling tangible goods.

users should do the same and change their PIN numbers, which will take time. Compl. ¶¶70-71. Plaintiffs and Class members suffered damages based on the opportunity cost and value of time they have been forced to expend to monitor their financial and bank accounts as a result of the Security Breach. *Id.* ¶69. Such damages also include the cost of obtaining replacement cards. *Id.*

Despite instructing its affected customers to take these steps, B&N now argues that the out-of-pocket costs and value of time spent taking these steps do not constitute injury. MTD at 8. B&N relies on *Clapper*, but again its reliance is misplaced. Here, Plaintiffs face a well-founded risk of identity theft as a result of the Security Breach. *See Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) ("Unlike in *Clapper,* Plaintiffs' fear of enforcement here is actual and well-founded and does not involve a 'highly attenuated chain of possibilities.'").

## II.     B&N's Motion to Dismiss Pursuant to 12(b)(6) Should be Denied.

B&N's motion to dismiss should be denied because Plaintiffs plead valid claims. B&N's arguments regarding lack of actual damages should be rejected because Plaintiffs alleged several cognizable forms of damages resulting from the Security Breach. *See generally* Section I, *supra*; Compl. ¶¶67-71.

### A.     Plaintiffs State a Valid Claim for Breach of Implied Contract.

B&N concedes that an implied contract exists arguing only that Plaintiffs have not alleged "actual damages sufficient to state a claim for breach of implied contract." MTD at 9-10. As set forth above and in the Complaint, Plaintiffs allege several forms of injury and damages. B&N further argues that there must be actual misuse of Plaintiffs' information resulting in monetary loss, such as lost money from unauthorized withdrawals or bank fees. MTD at 9-10. B&N's reliance on *In Re: Michaels Stores Pin Pad Litigation*, for this proposition is misplaced

because that opinion does not impose a requirement of actual misuse of PII for a breach of implied contract claim; rather, the court found that there must be actual injury. *In Re: Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518, 531-32 n.6 (N.D. Ill. 2011) (denying motion to dismiss a breach of implied contract claim).

Moreover, B&N ignores several of Plaintiffs' allegations regarding the injuries and damages they suffered. For example, Plaintiffs overpaid for purchases, lost the value of their PII, lost opportunity costs and the value of their time to mitigate the risks of identity theft/identity fraud; Plaintiff Winstead took time to dispute an unauthorized charge and have a new card issued; and Plaintiff Dieffenbach suffered anxiety as a result of the Security Breach. At the very least, Plaintiffs are entitled to nominal damages for the injury from the breach of implied contract. *Id.* ¶91.

B&N also argues that Plaintiffs have not alleged that their data was in fact skimmed. MTD at 10. However, Plaintiffs' allegations are sufficient for the Court to reasonably infer that Plaintiffs' PII was skimmed. *See* Section I.A. and n.3, *supra*.

### B. Plaintiffs Allege Actionable Illinois Consumer Fraud Act ("ICFA") Claims[6]

B&N's arguments seeking dismissal of the ICFA claims are of no avail.[7] As noted above, Plaintiffs have alleged actual damages. Further, given the purpose of the ICFA to stop all forms of prohibited conduct, B&N's argument that Plaintiffs fail to adequately allege an unfair practice under the ICFA is misplaced.

The ICFA—and claims brought under it—should be broadly and liberally construed to effect the Act's remedial purpose of eradicating all forms of deceptive and unfair business

---

[6] Plaintiff Dieffenbach's claims under the California statutes are analyzed below.

[7] B&N's comment that a 9-state consumer fraud class is unsubstantiated is inappropriate at the motion to dismiss stage. Presently, the allegations of Plaintiffs are at issue.

practices and to grant appropriate remedies to defrauded consumers. *Connick v. Suzuki Motor Co., Inc.*, 174 Ill. 2d 482, 503, 675 N.E.2d 584, 594 (1996); *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797, 805, 863 N.E.2d 800, 811-12 (2007). The language of the ICFA is intended to extend the reach of the statute broadly. *People ex rel. Daley v. Datacom Systems Corp.,* 146 Ill. 2d 1, 30, 585 N.E.2d 51, 64 (1991).

In *In Re: Michaels*, 830 F. Supp. 2d 518 (N.D. Ill. 2011), the court denied motions to dismiss the plaintiff's ICFA claims, rejecting arguments repeated by B&N here. Similarly, *In Re Michaels* involved thefts of customer PII when their credit/debit cards were swiped in Michaels stores. *Id.* at 521-22. The court held that while the plaintiffs did not adequately allege a deceptive practice claim, they had sufficiently alleged ICFA claims under an "unfairness" analysis and for violations of the Illinois Personal Information Protection Act ("PIPA"), 815 ILCS 530/1, *et seq.* *Id.* at 525-28.

B&N does not challenge Plaintiffs' claims here arising from its failure to timely notify Plaintiffs of the Security Breach. Nor does B&N dispute that a violation of the PIPA constitutes a per se violation of the ICFA. MTD at 10-11. B&N does not address these points at all and, thus, has waived any such arguments. *Satkar Hospitality Inc. v. Cook County Bd. of Review*, 819 F. Supp. 2d 727, 739 (N.D. Ill. 2011) (arguments not raised in motion to dismiss are deemed waived). Regardless*, In re Michaels* establishes that a violation of the PIPA is actionable under the ICFA.  830 F. Supp. 2d at 527-28.

Given that Plaintiffs sufficiently allege that B&N violated the ICFA, both by its actions and inactions, including its violation of the IPPA, the issue becomes the *calculation* of damages, not their *existence*. Under Section 10a(a) of the ICFA: "Any person who suffers actual damage as a result of a violation of this Act . . . may bring an action against such person. The court . . .

may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a(a) (West 1996). "Actual damage" is the "loss, hurt, or harm" that results from "the illegal invasion of a legal right," while "damages" is the "recompense or compensation awarded for the damage suffered." *Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 758, 625 N.E.2d 990, 997 (1993) (citing Ballentine's Law Dictionary 303 (3d ed. 1969); Black's Law Dictionary 351 (5th ed. 1979) ("The word ['damage'] is to be distinguished from its plural, 'damages', which means a compensation in money for a loss or damage")). Plaintiffs have shown that they and Class members have suffered injury and harm (actual damage) as the result of B&N's ICFA violations. Where the amount of damages is difficult or impossible to prove, the ICFA allows awards of nominal damages. *Kirkpatrick v. Strosberg*, 385 Ill. App. 3d 119, 126-133, 894 N.E.2d 781, 793-94 (2008) (awarding $100 in nominal damages). Additionally, punitive damages are available. *Id*. at 794-95; 815 ILCS 505/10a(a).

Unfairness under the ICFA is determined on a case-by-case basis. *Saunders v. Michigan Ave. Nat'l Bank*, 278 Ill. App. 3d 307, 313, 662 N.E.2d 602, 608 (1996). Courts consider whether the practice offends public policy, whether it is oppressive, and whether it causes consumers substantial injury. *Perez v. Citicorp Mortgage, Inc.*, 301 Ill. App. 3d 413, 421 (1998). "[A]ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 775 N.E.2d 951, 961 (2002). Public policy is manifested in existing statutes, common law, or some "other established concept of unfairness." *Fed. Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244-45 n.5 (1972). The heightened-pleading requirement of Rule 9(b) does not apply to ICFA claims

14

based on unfair practices. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 669–70 (7th Cir. 2008).

B&N's argument on unfairness is that Plaintiffs do not allege injury. MTD at 11. As noted above though, the injury requirement has been satisfied. *See generally*, Section I, *supra*; Compl. ¶¶ 10-14, 67-71, 107-09.

B&N also ignores the *In Re Michaels* decision upholding ICFA claims on virtually identical arguments and allegations. 830 F. Supp. 2d at 525-26. Relying in part on *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 495-96 (1st Cir. 2009), the *In Re Michaels* Court concluded:

> Here, Plaintiffs allege that Michaels failed to comply with Visa's Global Mandate, requiring the use of tamper-resistant PIN pads, and with the PCI Pin Security Requirements. Plaintiffs further allege that Michaels failed to promptly notify consumers of the security breach. As determined by the First Circuit in *TJX*, such conduct could constitute an unfair practice because it causes substantial injury to consumers.

830 F. Supp. 2d at 526. Plaintiffs' similar allegations here (Compl. ¶¶22-39) cannot be ignored.

Finally, B&N argues that there can be no ICFA liability without Plaintiffs having received a deceptive communication by B&N. MTD at 11. This argument goes to Plaintiffs' deception claims, not their unfairness claims. In any event, there were communications by B&N to Plaintiffs. Implicit in having its customers swipe their cards through the PIN pads is the communication that B&N was in compliance with the credit industry's safety and security practices. Plaintiffs allege B&N was not in compliance with these practices.

### C.   Plaintiffs Plead a Valid Claim for Invasion of Privacy.

To state a claim for public disclosure of private facts, Plaintiffs must allege that: (1) publicity was given to the disclosure of private facts; (2) the facts were private and not public facts; and (3) the matter made public would be highly offensive to a reasonable person. *Johnson*

*v. Kmart Corp.*, 311 Ill. App. 3d 573, 596, 723 N.E.2d 1192, 1197 (2000) (citation omitted). Here, publicity was given to Plaintiffs' private facts, and B&N's conduct would be highly offensive to a reasonable person.

### 1. Plaintiffs' private and confidential information was published.

To permit recovery for egregious conduct, courts recognize the need for flexibility in the application of the publication requirement. *Miller v. Motorola, Inc.,* 202 Ill. App. 3d 976, 978, 560 N.E.2d 900, 903 (1990). Because of B&N's failure to secure and protect Plaintiffs' PII, Plaintiffs' private and confidential information was published, on information and belief, to a large number of unauthorized persons via the Security Breach. Compl. ¶46. Thus, the publicity requirement is satisfied.

### 2. Plaintiffs' credit and debit card information is private.

B&N argues that Plaintiffs "have not demonstrated how credit and debit card information can constitute 'private facts' when such information is routinely and voluntarily disclosed in the course of everyday transactions." MTD at 12. This argument is misguided. There can be no reasonable dispute that credit and debit card information should not be disclosed to the public at large; the "everyday transactions" are made with the implicit agreement that the credit and debit card information is not to be published but, rather, used solely for the particular transaction. B&N's argument should be given short shrift.

### 3. The publication of Plaintiffs' private and confidential information was highly offensive.

Very little is as sacred as one's private and confidential information. *See Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill. 2d 352, 860 N.E.2d 307, 317 (2006) (a "right of privacy" connotes an interest in the secrecy of personal information). Because of B&N's failure to secure and protect customers' PII, criminals were able to obtain it. It is difficult, if not

impossible, to conceive that B&N's dissemination of Plaintiffs' PII would not be considered highly offensive to a reasonable person.

### D. Plaintiff Dieffenbach Pleads a Valid California Database Breach Act Claim.

Plaintiff Dieffenbach is a citizen of California. Compl. ¶11. B&N failed to ensure that personal information about its Californian customers was protected and failed to give proper notice of the Security Breach. Compl. ¶¶118-32.

#### 1. B&N's security failures

Plaintiffs alleged that B&N failed to comply with its statutory obligations to implement and maintain reasonable security procedures and practices under Cal. Civ. Code § 1798.81.5(c). Compl. ¶¶122-26. B&N failed to comply with security standards and allowed its customers' PII to be compromised by cutting corners on security measures that could have prevented or mitigated the Security Breach. *Id.* ¶¶4, 22-40.

#### 2. B&N's failure to provide immediate notification of the Security Breach

B&N failed to provide immediate notification of the Security Breach pursuant to Cal. Civ. Code § 1798.82, which prevented Plaintiff Dieffenbach and other Class members from protecting themselves from the Security Breach. Compl. ¶¶121-27, 130. B&N has not argued that it provided proper notification, but that Plaintiff Dieffenbach fails to allege any substantive violation of the statute and injuries attributable to the delay in notification. MTD at 12-13.

Section 1798.82 provides that the "owner or licensee" of the information is to be notified of the breach. B&N relies on Section 1798.81.5(a) for its argument that an "owner or licensee" of PII is a business (not an individual consumer) and, therefore, the statute's notification provisions do not require notification to the individual consumer, but to some business entity that Plaintiff Dieffenbach fails to identify. MTD at 13. B&N's tortured interpretation of the statute is

wrong and contrary to the stated purpose of the statute. Section 1798.80 provides definitions for various terms and does not define "owner or licensee." Where a term is undefined, it is to be given its plain meaning. In this case, Plaintiff Dieffenbach is the "owner," as she is the person who owns her personal information and timely notice was to be given to her by B&N. This is in line with the stated "intent of the Legislature to ensure that personal information about Californian residents is protected." Cal. Civ. Code §1798.81.5(a).

B&N's claim that Plaintiff Dieffenbach has not alleged a cognizable injury under the Act is also unavailing. B&N relies on a case solely addressing §1798.83 and the sale of personal information to marketers. Nothing in *Boorstein v. Men's Journal, LLC*, No. CV-12-771 DSF, 2012 WL 2152815 (C.D. Cal. June 14, 2012), involves violations of §1798.82. Section 1798.84 provides that any customer injured by a violation of this title may institute a civil action to recover damages and any business that violates this title may be enjoined. Cal. Civ. Code § 1798.84. Here, the injury suffered by Plaintiff Dieffenbach derives from the violation of §1798.82 itself. The "injury required by Article III can exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010). Courts have applied this principle—that the Legislature can define a "legal right, the invasion of which establishes standing,"—to find standing when a consumer alleges a violation of a consumer privacy statute with a private right of action. *See*, *e.g.*, *Graczyk v. West Publ'g Co.*, 660 F.3d 275, 277 (7th Cir. 2011) (violations of the Driver's Privacy Protection Act, which prohibits certain uses and disclosures of private information provided to DMVs, was sufficient to establish injury without anything further). The same holds true here. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942 (S.D. Cal. 2012) (where the plaintiffs' allegations of injury were sufficient for Article III standing, their

allegations of injury were sufficient for their California Database Breach Act claim). By creating a specific civil enforcement mechanism for violations of Civil Code §1798.82, the California Legislature conferred standing on people affected by a violation. Moreover, Plaintiff Dieffenbach has alleged actual damages (*see generally,* Section I, *supra*), including emotional distress, that are fairly attributable to the delay in notifying the public of the Security Breach. B&N's motion to dismiss Count IV should be denied.

> **E.     Plaintiff Dieffenbach Pleads a Valid California UCL Claim.**

California courts have used three different methods to determine unfairness under the UCL. Dieffenbach's claims satisfy each methodology. *See Davis v. Ford Motor Credit Co.,* 179 Cal. App. 4th 581, 593-98 (2009).

*Smith v. State Farm Mutual Automobile Insurance Co.*, 93 Cal. App. 4th 700, 718 (2001), applied a balancing test of the practice's "impact on its alleged victim . . . against the reasons, justifications and motives of the alleged wrongdoer." "[A]n 'unfair' business practice occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.* at 719. These are the same standards as under the ICFA. As noted above, this test is satisfied here. *See* Section II.B, *supra*.

A second line of cases, including *Gregory v. Albertson's Inc.*, 104 Cal. App. 4th 845, 854 (2002), focus on public policy: "the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." This "tethering" requirement is satisfied here because Plaintiff Dieffenbach has alleged violations of California's Database Breach Act.

Finally, some California courts look to FTC interpretations to define unfairness. *See Camacho v. Auto. Club of S. California*, 142 Cal. App. 4th 1394 (2006). The factors that define unfairness under Section 5 of the Federal Trade Commission Act are: (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided. *Id.* at 1403. Here, as noted above and in *In Re Michaels* and *TJX*, there is a substantial consumer injury imposed by the theft of PII. This injury is not offset by a corresponding benefit to consumers. B&N provides no argument or discussion at all of an offsetting benefit to consumers. Further, consumers cannot reasonably avoid this injury because B&N has control over the PIN pads. Finally, B&N failed to meet the credit industry's safety requirements on this very subject. Thus, Plaintiff Diefffenbach satisfies this analysis as well.

B&N also claims that Plaintiff's UCL claim must fail because there are no allegations of monetary or property damage. MTD at 13-14. As explained above, this is contradicted by the allegations of the Complaint and, therefore, B&N's citations are inapposite. Compl. ¶ 142.

<u>CONCLUSION</u>

For the above reasons, Plaintiffs respectfully request that the Court enter an order denying Barnes & Noble's Motion to Dismiss and granting such other relief the Court deems just.

Date: June 11, 2013

Respectfully submitted,

Ray Clutts, Heather Dieffenbach,
Jonathan Honor, and Susan Winstead,
individually and on behalf of all others
similarly situated,

 /s/ Sharon Harris
Ben Barnow
Sharon Harris
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com
s.harris@barnowlaw.com

 /s/ Joseph J. Siprut
Joseph J. Siprut
SIPRUT PC
17 North State Street, Suite 1600
Chicago, IL 60602
Tel: (312) 236-0000
Fax: (312) 878-1342
jsiprut@siprut.com

Aron D. Robinson
LAW OFFICE OF ARON D. ROBINSON
180 W. Washington Suite 700
Chicago, Illinois 60602
Tel: (312) 857-9050
Fax: (312) 857-9054
adroblaw@aol.com

Adam J. Levitt
GRANT & EISENHOFER P.A.
30 North LaSalle Street, Suite 1200
Chicago, IL 60602
Tel: (312) 214-0000
Fax: (312) 214-0001
alevitt@gelaw.com

Julie D. Miller
COMPLEX LITIGATION GROUP LLC
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
Tel: (847) 433-4500
Fax: (847) 433-2500
Julie@complexlitgroup.com

William A. Baird
MARKUN ZUSMAN & COMPTON LLP
Sunset Blvd., Suite A380
Pacific Palisades, California 90272
Tel: (310) 454-5900
Fax: (310) 454-5970
tbaird@mzclaw.com

*Attorneys for Plaintiffs*

**<u>Certificate of Service by Electronic Means</u>**

The undersigned hereby certifies that the preceding document was caused to be served electronically this 11th day of June 2013 with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Sharon Harris

Sharon Harris

BARNOW AND ASSOCIATES, P.C.

One North LaSalle Street, Suite 4600

Chicago, IL 60602

Tel: (312) 621-2000

Fax: (312) 641-5504

s.harris@barnowlaw.com