**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Barnes & Noble Pin Pad Litigation* ) ) ) ) ) ) ) | Case No. 12-cv-8617<br><br>Hon. John W. Darrah<br><br>Magistrate Judge Schenkier |

**PLAINTIFFS' OPPOSITION TO
BARNES & NOBLE'S MOTION TO DISMISS THE
FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs' First Amended Consolidated Class Action Complaint addresses the deficiencies the Court identified in Plaintiffs' previous complaint. *See* D.E. #58 ("Amended Complaint" or "FAC"). Plaintiffs have clarified and expanded upon their allegations. FAC ¶¶ 3–5, 16–18, 71. As shown herein, Plaintiffs' Amended Complaint satisfies Article III standing requirements. Thus, Barnes & Noble's motion to dismiss the Amended Complaint should be denied.

**The Amended Complaint**

Plaintiffs' Amended Complaint contains numerous additional allegations that address and rectify the deficiencies referenced in the Court's order dismissing the prior complaint. *See generally* Mem. Op. and Order (Darrah, J., Sept. 3, 2013) (D.E. #57) ("Order"). The deficiencies set forth by the Court—and the allegations that cure these deficiencies—are set forth below, side-by-side, for comparison.

| The Court's Order | Plaintiffs' Amended Complaint |
|---|---|
| "Nothing in the Complaint indicates Plaintiffs have suffered either a 'certainly impending' injury or a 'substantial risk' of an injury, and therefore, the increased risk is insufficient to establish standing." Order at 5.<br><br>"Plaintiffs have not pled the harm they potentially face is imminent, and . . . they cannot do so because they have not sufficiently alleged the information they are trying to protect was actually stolen." Order at 7.<br><br>". . . speculation of future harm does not constitute actual injury." Order at 8. | "*Barnes & Noble's security failures . . . put Plaintiffs' and Class members' financial information and interest at serious*, immediate, *and ongoing risk* and, additionally, caused cost and expenses to Plaintiffs and Class members attributable to responding, identifying, and correcting damages that were reasonably foreseeable as a result of Barnes & Noble's willful and negligent conduct." FAC ¶5 (italics from previous Complaint).<br><br>"On information and belief, Plaintiffs' and Class members' PII was stolen by the skimmers—and, thus, disclosed—when Plaintiffs and Class members swiped their credit and debit cards at the affected Barnes & Noble stores during the time period in which the PIN pad devices were compromised." FAC ¶4. |
| "Here, there is no actual injury pled because there are no facts to support the allegations that the information was disclosed." Order at 6.<br><br>". . . there are no facts alleged to support the conclusion Plaintiffs' information was disclosed, which is necessary for there to cause a loss of privacy." Order at 7. | "On information and belief, Plaintiffs' and Class members' PII was stolen by the skimmers—and, thus, disclosed—when Plaintiffs and Class members swiped their credit and debit cards at the affected Barnes & Noble stores during the time period in which the PIN pad devices were compromised." FAC ¶4.<br><br>"On information and belief, Barnes & Noble has complete and full access to the list of credit and debit card information that was skimmed from the concerned PIN pad devices. Barnes & Noble has opposed discovery of this information and refuses to disclose it to Plaintiffs and Class members. This information is therefore outside the control and reach of Plaintiffs and Class members." FAC ¶3. |

2

| | |
|---|---|
| "Because [Plaintiffs have not alleged their information was actually stolen], the costs they incurred in attempting to minimize their risks due to the security breach do not qualify as actual harm and thereby do not confer standing." Order at 7. | "On information and belief, Plaintiffs' and Class members' PII was stolen by the skimmers—and, thus, disclosed—when Plaintiffs and Class members swiped their credit and debit cards at the affected Barnes & Noble stores during the time period in which the PIN pad devices were compromised." FAC ¶4. |
| "Dieffenbach's anxiety following the security breach is insufficient to establish standing, as there is no indication there is an imminent threat of her information being used in a malicious way . . . ." Order at 9. | "*Barnes & Noble's security failures . . . put Plaintiffs' and Class members' financial information and interest at serious*, immediate, *and ongoing risk* and, additionally, caused cost and expenses to Plaintiffs and Class members attributable to responding, identifying, and correcting damages that were reasonably foreseeable as a result of Barnes & Noble's willful and negligent conduct." FAC ¶5 (italics from previous Complaint).<br><br>"On information and belief, Plaintiffs' and Class members' PII was stolen by the skimmers—and, thus, disclosed—when Plaintiffs and Class members swiped their credit and debit cards at the affected Barnes & Noble stores during the time period in which the PIN pad devices were compromised." FAC ¶4. |
| "Plaintiffs have not pled that Barnes & Noble charged a higher price for goods whether a customer pays with credit, and therefore, that additional value is expected in the use of a credit card." Order at 9. | "On information and belief, the cost to Barnes & Noble of collecting and safeguarding PII is built into the purchase price of all of its products sold at its stores, regardless of whether a product is purchased via cash, credit card, or debit card." FAC ¶71. |
| ". . . it is not directly apparent that [Winstead's] fraudulent charge was in any way related to the security breach at Barnes & Noble." Order at 10. | "On information and belief, Plaintiffs' and Class members' PII was stolen by the skimmers—and, thus, disclosed—when Plaintiffs and Class members swiped their credit and debit cards at the affected Barnes & Noble stores during the time period in which the PIN pad devices were compromised." FAC ¶4. |

3

|  | "At the time of the fraudulent charge, Winstead was unaware of any other data breaches that would have affected or related to this particular credit card. "A high-ranking official for [Barnes & Noble] said that hackers had used information from some customers' credit cards to make unauthorized purchases, but that activity had mainly occurred in September and had declined in recent weeks"[1]—which coincides with the fraudulent activity on Winstead's credit card." FAC ¶17.<br><br>"Prior to the Security Breach, Winstead subscribed to identity protection monitoring services from Identity Guard at a cost of $16.99 per month. Winstead continued with and continues to subscribe to this identity protection monitoring service, in part, because of the Security Breach." FAC ¶18. |
|---|---|

## **Argument**

Barnes & Noble's Motion to Dismiss focuses only on Plaintiffs' standing to pursue their claims. Thus, Plaintiffs' arguments herein are limited to the issue of standing. Barnes & Noble has incorporated its arguments on the merits of Plaintiffs' claims from its prior briefing in support of its prior motion to dismiss. MTD at 1. Accordingly, Plaintiffs incorporate their prior opposition to Barnes & Noble's motion to dismiss and all arguments contained therein as to the merits of each of their claims. *See* D.E. #48.

Barnes & Noble's Motion to Dismiss must be denied because Plaintiffs' Amended Complaint alleges that their PII was stolen—the absence of sufficient allegations regarding same from their previous complaint was the crux of the Court's order granting Barnes & Noble's prior motion to dismiss. *See generally* Order. This allegation alone satisfies Article III standing. Nevertheless, Plaintiffs have added new allegations to address the majority of the Court's

---

[1] Michael S. Schmidt, *Credit Card Breach at Barnes & Noble Stores*, THE NEW YORK TIMES, available at http://www.nytimes.com/2012/10/24/business/hackers-get-credit-data-at-barnes-noble.html?_r=0 (last visited Sep. 23, 2013).

remaining standing issues, as set forth above and discussed in further detail below. Plaintiffs therefore have Article III standing to pursue their claims.

## I. Plaintiffs' PII was Stolen.

Plaintiffs now allege that "Plaintiffs' and Class members' PII was stolen by the skimmers—and, thus, disclosed—when Plaintiffs and Class members swiped their credit and debit cards at the affected Barnes & Noble stores during the time period in which the PIN pad devices were compromised." FAC ¶3. Barnes and Nobel admits this and that the skimmers used that information to make fraudulent charges. FAC ¶17. Plaintiffs also allege that "Barnes & Noble has complete and full access to the list of credit and debit card information that was skimmed from the concerned PIN pad devices." FAC ¶4. As illustrated above, the Court dismissed Plaintiffs' previous complaint, in part, due to a lack of sufficient allegations regarding Plaintiffs' PII having been stolen. These new allegations satisfy the Article III standing requirement. As set forth by the Court in its Order, the Court stated Plaintiffs did not allege that their PII was stolen, and Plaintiffs now allege this fact. *See* Order at 5–8. Plaintiffs' have therefore sufficiently alleged an actual injury and have Article III standing.

Barnes & Noble incorrectly argues that Plaintiffs' additional allegations are "wholly irrelevant" because it is Plaintiffs' burden to allege sufficient facts to establish standing.[2] MTD at 2. But Barnes & Noble misstates the burden of proof. Where the information is within the possession, custody, and control of a defendant, a plaintiff may plead allegations upon information and belief. Courts have long cautioned against requiring evidentiary proofs at the pleading stage:

---

[2] B&N asserts that Plaintiffs' allegations are untrue, but the Court must accept well-plead allegations as true on a motion to dismiss, particularly in the absence of evidence to the contrary. *Revelis v. Napolitano*, 844 F. Supp. 2d 915, 919 (N.D. Ill. 2012) (citing *Transit Exp., Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001)).

5

> The Supreme Court has made clear that Rule 8(a) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007); *see also Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008) (quotation marks omitted) (noting that a complaint need not plead evidence); *Packaging Supplies, Inc. v. Harley–Davidson, Inc.,* No. 08–cv–400, 2009 WL 855798, at *5 (N.D. Ill. Mar. 30, 2009) ("[W]hile a plaintiff at the pleading stage must allege plausible facts, it need not marshal all of its evidence."). Indeed, courts have routinely rejected the argument that defendants advance here. *See, e.g., Boykin v. KeyCorp,* 521 F.3d 202, 215 (2d Cir. 2008) (Sotomayor, J.); *E*Trade Savings Bank v. Nat'l Settlement Agency, Inc.,* No. 07 Civ. 8065, 2008 WL 2902576, at *1 n.1 (S.D.N.Y. July 25, 2008); *Dudzienski v. Gordon Food Serv., Inc.,* No. 07 C 4033, 2008 WL 4372720, at *2 (N.D. Ill. Mar. 19, 2008); *Follman v. Hospitality Plus of Carpentersville, Inc.,* 532 F. Supp. 2d 960, 963 n.1 (N.D. Ill. 2007). Nor do defendants cite any authority for the proposition that allegations made on information and belief are somehow insufficient or impermissible under Rule 8(a).

*Trustees of the Auto. Mechanics' Indus. Welfare & Pension Funds Local 701 v. Elmhurst Lincoln Mercury*, 677 F. Supp. 2d 1053, 1054–55 (N.D. Ill. 2010). Further, Barnes & Noble cannot oppose discovery of this information, which it did with vigor, and then use an alleged lack of information to defeat Plaintiffs' claims.

Barnes & Noble again relies on *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013), to support its position that Plaintiffs lack standing. MTD at 3. The Court noted it had "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact' and that '[a]llegations of *possible* future injury' are not sufficient," signifying the Court was not making new law. *Id.* (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis added to original by the *Clapper* Court)). The Court further held its "cases do not uniformly require plaintiffs to demonstrate it is literally certain that the harms they identify will come about. In some instances, we have found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Id.* at n. 5 (collecting cases). In concluding the plaintiffs lacked Article III standing, *Clapper* noted it was "speculative" whether the Government would actually acquire the plaintiffs'

6

communications under FISA and found that the plaintiffs failed to set forth facts that their communications would be targeted by the Government. *Id.* at 1148–49.

Here, Plaintiffs allege that their PII was already stolen (there is no speculation, as the harm has already occurred) and that there is an increased risk their stolen PII will be subjected to additional misuse, as evidenced by, *inter alia*, the unauthorized charge on Plaintiff Winstead's credit card account. FAC ¶¶4, 5, 15–17. The injury here is not self-inflicted or conjectural; it is concrete, particularized, and supported by the facts—*Clapper* supports standing. *Clapper*, 133 S. Ct. at 1153–54. Moreover, Plaintiff Winstead is paying for identity protection monitoring services, in part, as a result of the Security Breach. FAC ¶18.

Further, a data breach creating a risk of identity theft satisfies Article III standing. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633–34 (7th Cir. 2007). *Clapper* does not change Article III standing law and *Pisciotta* remains in force in this Circuit. *See also Booker-El v. Superintendent, Ind. State Prison,* 668 F.3d 896, 899 (7th Cir. 2012) (citing *Pisciotta* and finding standing where, assuming a property interest in the inmates' recreation fund, there was a substantial risk to plaintiff that he would lose benefits if the fund was misappropriated). Because Plaintiffs' PII has been stolen, Plaintiffs are at an increased risk of future harm from identity theft, which is sufficient for purposes of alleging injury for Article III standing. *Pisciotta*, 499 F.3d 629 at 634 ("the injury-in-fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, absent the defendant's actions"). In fact, Plaintiff Winstead has already fallen victim to the theft of her PII. FAC ¶¶15–18. Absent Barnes & Noble's conduct, which resulted in the Security Breach and the theft of Plaintiffs' PII, Plaintiffs would not have

suffered their current injuries and would not be subject the increased risk of future additional harm.

## II.     Plaintiff Winstead Suffered Out-of-Pocket Losses.

Plaintiff Winstead alleges that "prior to the Security Breach, Winstead subscribed to identity protection monitoring services from Identity Guard at a cost of $16.99 per month. Winstead continued with and continues to subscribe to this identity protection monitoring service, in part, because of the Security Breach." FAC ¶18. Given the additional allegations that Plaintiff Winstead's PII was stolen, and that her continuation of identity protection monitoring services is partly based on this theft, these out-of-pocket losses also constitute actual damages, in addition to those described above. The expenditures for such services by Plaintiff Winstead are based on the fact of the theft of her PII—not conjecture or fear, as Barnes and Noble erroneously argues, and Plaintiff Winstead has continued these services because of the Security Breach, a fact that Barnes and Noble refuses to accept despite the plain language of the allegations in the Amended Complaint. MTD at 3–5. Plaintiff Winstead's PII has already been stolen and the harm has already occurred, as recognized by *Clapper*. *Clapper*, 133 S. Ct. at 1152–53.

Further, given that (1) Plaintiff Winstead's PII was stolen, (2) the credit card she used at an affected Barnes & Noble store experienced fraudulent activity shortly after it was used and "swiped" there, (3) Barnes and Noble admits that the thieves of the PII used it to make fraudulent purchases during the same period in which Plaintiff Winstead incurred the fraudulent charge,[3] (4) and at the time of the fraudulent charge, Plaintiff Winstead was unaware of any other data breaches affecting the card, it is more likely true than not that the fraudulent charge was a direct

---

[3] *See* FAC ¶17 ("A high-ranking official for [Barnes & Noble] said that hackers had used information from some customers' credit cards to make unauthorized purchases, but that activity had mainly occurred in September and had declined in recent weeks." Michael S. Schmidt, *Credit Card Breach at Barnes & Noble Stores*, THE NEW YORK TIMES, available at http://www.nytimes.com/2012/10/24/business/hackers-get-credit-data-at-barnes-noble.html?_r=0).

8

result of the Security Breach. FAC ¶¶4, 15–17. In fact, it is the only logical conclusion. Injury-in-fact that is even *indirectly* caused by a defendant's actions satisfies the fairly traceable requirement of Article II standing. *See, e.g.*, *Resnick v. AvMed Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012). To label this chain of events "speculation," as Barnes and Noble does, is simply an effort to ignore the facts to escape liability for its conduct. MTD at 4.

### III. Plaintiffs Paid Higher Prices to Barnes & Noble to Protect Their PII, and the Value of Their Purchases Was Diminished By Barnes & Noble's Failure to Do So.

Plaintiffs allege that "the cost to Barnes & Noble of collecting and safeguarding PII is built into the purchase price of all of its products sold at its stores, regardless of whether a product is purchased via cash, credit card, or debit card." FAC ¶71. Barnes & Noble labels this as speculation, but notably does not refute the allegation. In this context, it does not matter how a customer pays: undoubtedly, Barnes & Noble sets prices to reflect the costs of doing business, and that analysis has to include costs of collecting and safeguarding customer information, including their PII, just as it includes the costs of a safe or lock box and armored security service for cash customers. The shifting of those costs appear in the prices paid.

Courts have found standing where a defendant charges money for a good or service but fails to honor its own policies in connection with providing the good or service. *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011) ("[A] plaintiff who is a consumer of certain services (i.e., who 'paid fees' for those services) may state [a claim requiring monetary loss] when a company, in violation of its own policies, discloses personal information about its customers to the public."). In *In re: Sony Gaming Networks and Customer Data Sec. Breach Litigation*, MDL No. 11-md-2258, 2012 WL 4849054, at *15 (S.D. Cal. Oct. 11, 2012), the court noted that economic injury can occur both when a plaintiff gives more or acquires less in a transaction than he or she otherwise would have. *See also Resnick*, 693 F.3d at 1328 (economic

9

injury stemming from the failure to implement security policies, for which plaintiffs allegedly paid as a part of their monthly premiums). When Plaintiffs' PII was stolen, the value of the prices they paid for their purchases from Barnes & Noble was therefore diminished.

### Conclusion

For the above reasons, Plaintiffs respectfully request that the Court enter an order denying Barnes & Noble's Motion to Dismiss and granting such other relief the Court deems just and proper.

Date: October 31, 2013

Respectfully submitted,

Ray Clutts, Heather Dieffenbach, Jonathan Honor, and Susan Winstead, individually and on behalf of all others similarly situated,

 /s/ Ben Barnow
Ben Barnow
Sharon Harris
Blake A. Strautins
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com
s.harris@barnowlaw.com
b.strautins@barnowlaw.com

 /s/ Joseph J. Siprut
Joseph J. Siprut
SIPRUT PC
17 North State Street, Suite 1600
Chicago, IL 60602
Tel: (312) 236-0000
Fax: (312) 878-1342
jsiprut@siprut.com

        Aron D. Robinson
        LAW OFFICE OF ARON D. ROBINSON
        180 W. Washington Suite 700
        Chicago, Illinois 60602
        Tel: (312) 857-9050
        Fax: (312) 857-9054
        adroblaw@aol.com

        Adam J. Levitt
        GRANT & EISENHOFER P.A.
        30 North LaSalle Street, Suite 1200
        Chicago, IL 60602
        Tel: (312) 214-0000
        Fax: (312) 214-0001
        alevitt@gelaw.com

        Jeffrey A. Leon
        COMPLEX LITIGATION GROUP LLC
        513 Central Avenue, Suite 300
        Highland Park, Illinois 60035
        Tel: (847) 433-4500
        Fax: (847) 433-2500
        jeff@complexlitgroup.com

        William A. Baird
        MARKUN ZUSMAN & COMPTON LLP
        Sunset Blvd., Suite A380
        Pacific Palisades, California 90272
        Tel: (310) 454-5900
        Fax: (310) 454-5970
        tbaird@mzclaw.com

        *Attorneys for Plaintiffs*

**Certificate of Service by Electronic Means**

The undersigned hereby certifies that the preceding document was caused to be served electronically this 31st day of October 2013, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Ben Barnow
Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com