In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 17-2408

HEATHER DIEFFENBACH and SUSAN WINSTEAD,

*Plaintiffs-Appellants,*

*v.*

BARNES & NOBLE, INC.,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 8617 — **Andrea R. Wood**, *Judge.*

———————————

ARGUED DECEMBER 6, 2017 — DECIDED APRIL 11, 2018

———————————

Before WOOD, *Chief Judge*, and EASTERBROOK and
HAMILTON, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. In 2012 Barnes & Noble dis-
covered that scoundrels had compromised some of the ma-
chines, called PIN pads, that it used to verify payment in-
formation. They acquired details such as customers' names,
card numbers and expiration dates, and PINs. Some custom-
ers temporarily lost the use of their funds while waiting for
banks to reverse unauthorized charges to their accounts.

Some spent money on credit-monitoring services to protect their financial interests. Some lost the value of their time devoted to acquiring new account numbers and notifying businesses of these changes. Many people use credit or debit cards to pay bills automatically; every time the account number changes, these people must devote some of their time and mental energy to notifying merchants that the old numbers are invalid and new ones must be used. In this suit under state law, plaintiffs seek to collect damages not from the data thieves but from Barnes & Noble. Jurisdiction rests on the Class Action Fairness Act, 28 U.S.C. §1332(d), because the proposed class contains at least 100 members, the amount in controversy exceeds $5 million, and minimal diversity of citizenship exists.

The district court initially held that the representative plaintiffs had suffered no loss at all—that they did not even have standing to sue. 2013 U.S. Dist. LEXIS 125730 (N.D. Ill. Sept. 3, 2013). After this court held in *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015), and *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016), that consumers who experience a theft of their data indeed have standing, the district court (acting through a different judge) concluded that the complaint alleges injury. 2016 U.S. Dist. LEXIS 137078 at *8–11 (N.D. Ill. Oct. 3, 2016). But the judge nonetheless dismissed the complaint, ruling that it does not adequately plead damages. *Id*. at *13–25. See also 2017 U.S. Dist. LEXIS 97161 (N.D. Ill. June 13, 2017) (dismissing an amended complaint).

This seems to us a new label for an old error. To say that the plaintiffs have standing is to say that they have alleged injury in fact, and if they have suffered an injury then dam-

ages are available (if Barnes & Noble violated the statutes on which the claims rest). The plaintiffs have standing because the data theft may have led them to pay money for credit-monitoring services, because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal, and because the value of one's own time needed to set things straight is a loss from an opportunity-cost perspective. These injuries can justify money damages, just as they support standing.

Pleading is governed by Fed. R. Civ. P. 8 and 9. Rule 8(a)(3) requires the plaintiff to identify the remedy sought, but it does not require detail about the nature of the plaintiff's injury. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). What's more, Rule 54(c) provides that the prevailing party receives the relief to which it is entitled, whether or not the pleadings have mentioned that relief. Rule 9(g), by contrast, does require details, but only with respect to "special damages." Barnes & Noble does not contend, and the district judge did not find, that any loss plaintiffs have identified is treated as "special damages." As far as the federal rules are concerned, then, all this complaint needed to do was allege generally that plaintiffs have been injured.

The district court did not apply these rules, instead demanding that the complaint contain all specifics that would have been required had this suit been in state court. 2016 U.S. Dist. LEXIS 137078 at *13–19, 22–25. But in federal court it is the federal rules that determine what must be in a complaint. See, e.g., *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980); *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996); *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). The fact that the federal rules

do not require plaintiffs to identify items of loss (except for special damages) means that this complaint cannot be faulted as insufficient.

Still, a district court could grant judgment on the pleadings, see Fed. R. Civ. P. 12(c), if none of the plaintiffs' injuries is compensable, as a matter of law, under the statutes on which they rely. We therefore turn to state law.

Heather Dieffenbach dealt with Barnes & Noble in California and contends on appeal that she suffered four kinds of injury: (1) her bank took three days to restore funds someone else had used to make a fraudulent purchase; (2) she had to spend time sorting things out with the police and her bank; (3) she could not make purchases using her compromised account for three days; and (4) she did not receive the benefit of her bargain with Barnes & Noble. The fourth of these is not a loss; it is the failure to obtain a gain from the transaction. (Dieffenbach does not contend that any of the items she purchased was defective or that Barnes & Noble promised any particular level of security, for which she paid. See *Remijas*, 794 F.3d at 694–95.) But the first three are losses, at least in economic terms.

Dieffenbach invokes two statutes: California's Customer Records Act and its Unfair Competition Law. The Records Act provides that a "customer injured by a violation of [this Act] may … recover damages." Cal. Civ. Code §1798.84. The statute does not define injury, nor does any state decision we could find. The district judge took this absence of a definition as equivalent to conditioning recovery on satisfaction of the Unfair Competition Law, which provides that "lost money or property" supports recovery. Cal. Bus. & Prof. Code §17204. That's a problematic move; the statutes are distinct,

after all, as is their language. But this does not matter, because the first three losses that Dieffenbach identifies fit within the phrase "lost money or property".

California's judiciary understands "lost money or property" to mean an economic injury and tells us that "[t]here are innumerable ways in which economic injury … may be shown." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). An "identifiable trifle of economic injury" suffices. *Id.* at 330 n.15 (internal quotation marks and citation omitted). We know from *Marentes v. Impac Funding Corp.*, 2014 WL 2157539 (Cal. App. May 23, 2014), that the time value of money meets the statutory definition. Although the loss of use in *Marentes* was longer (six months there, three days for Dieffenbach) the principle that the time value of money is "money or property" controls. Cf. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006), which holds that a worker suffers a compensable injury even though the employer awards back pay to make up for salary lost during a 37-day suspension. Losing the use of money for three days may be a trifle to some people (though to others it may be a calamity), but a trifling loss suffices under California law. And state courts have said that significant time and paperwork costs incurred to rectify violations also can qualify as economic losses. Compare *Sarun v. Dignity Health*, 232 Cal. App. 4th 1159, 1169 (2014) ("The tangible burden of [providing tax return information and other personal financial data]" satisfies the Law), with *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 82 (2013) (finding time spent "preparing and assembling materials" for a loan modification application de minimis and insufficient).

Now for Illinois. Susan Winstead, the second representative plaintiff, alleges that (1) her bank contacted her about a potentially fraudulent charge on her credit card statement and deactivated her card for several days; and (2) the security breach at Barnes & Noble "was a decisive factor" when she renewed a credit-monitoring service for $16.99 per month. Her claim rests on the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and the proposed class relies on materially identical laws in other states. A person "who suffers actual damage as a result of a violation of this Act" may recover. 815 ILCS 505/10a(a). A monthly $17 out of pocket is a form of "actual damage". It is real and measurable; Illinois does not require more. See *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 195–99 (2005). And, if the plaintiff has suffered an economic loss, noneconomic injuries are compensable. See, e.g., *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402–03 (2009).

An Illinois appellate court has held that a person who purchases credit-monitoring services after a merchant discloses personal information has not suffered actual damages. *Cooney v. Chicago Public Schools*, 407 Ill. App. 3d 358, 365–66 (2010). We think it unlikely that the Supreme Court of Illinois would agree with the "actual damages" portion of this decision, given the breadth of the statutory language. Money out of pocket is a standard understanding of actual damages in contract law, antitrust law (*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979)), the law of fraud, and elsewhere. To get damages plaintiffs must show that a culpable data breach caused the monthly payments, but the complaint cannot be dismissed before giving the class an opportunity to do so.

Everything we have said about California and Illinois law concerns injury. We have not considered whether Barnes & Noble violated any of these three state laws by failing to prevent villains from stealing plaintiffs' names and account data. Barnes & Noble was itself a victim. Its reputation took a hit, it had to replace the compromised equipment plus other terminals that had been shown to be vulnerable, and it lost business. None of the state laws expressly makes merchants liable for failure to crime-proof their point-of-sale systems. Plaintiffs may have a difficult task showing an entitlement to collect damages from a fellow victim of the data thieves. It is also far from clear that this suit should be certified as a class action; both the state laws and the potential damages are disparate. These and other questions need consideration on remand. That the case has been pending for 5½ years without a decision by the district court whether the proposed class can be certified is problematic under Fed. R. Civ. P. 23(c)(1)(A), which requires the decision to be made "[a]t an early practicable time after a person sues … as a class representative". All we hold today is that the complaint cannot be dismissed on the ground that the plaintiffs do not adequately allege compensable damages.

The judgment is vacated, and the case is remanded for proceedings consistent with this opinion.

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit